UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **ADVANCED CODING TECHNOLOGIES LLC,**<br><br>　　　　　　　　　　Plaintiff,<br><br>　v,<br><br>**GOOGLE LLC,**<br><br>　　　　　　　　　　Defendant. | CIVIL ACTION NO. 2:24-cv-00353-JRG<br><br>**Jury Trial Demanded** |

**JOINT MOTION TO ENTER DISPUTED
PROTECTIVE ORDER**

Defendant Google LLC ("Google") and Plaintiff Advanced Coding Technologies LLC ("ACT") (collectively, "the Parties") hereby submit the Joint Motion to Enter Disputed Protective Order attached hereto and incorporated herein by reference. The Parties have indicated their competing proposals using highlighting and square brackets in the attached order (indicating ACT's Proposal or Google's Proposal). While the parties have reached agreement on most of the issues, four issues remain:

　　　　(1)　　Designated Party Representatives (Paragraph 5);

　　　　(2)　　Breakout Room (Paragraph 10);

　　　　(3)　　Acquisition Bar (Paragraph 12);

　　　　(4)　　Identification of Bound Parties (Paragraph 32).

The Parties' arguments in favor of their proposals are presented below:

**I.　　DESIGNATED PARTY REPRESENTATIVES (PARAGRAPH 5)**

**ACT's Position**

Defendant's proposal eliminates the Court's default provision that would allow ACT the

right to have three designated representatives that are reasonably necessary for the litigation of this Action, including with respect to instances where counsel needs to provide advice and relay confidential financial information for the purposes of settlement (rather than the language regarding "responsibility for making decisions dealing directly with the litigation in this Action or who is assisting outside counsel in preparation for proceedings" that Defendant proposes).

Defendant provides no just rationale from diverting from the Model Order. Notably, other provisions make clear that such designated representatives are only allowed access to CONFIDENTIAL documents rather than "RESTRICTED -ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE." Moreover, Defendant makes no showing that there is a risk of inadvertent disclosure any greater than the other categories of individuals with access to DESIGNATED MATERIAL, such as in-house counsel, that it has agreed to.

Defendant's apparent assumptions about ACT's "need[s] to understand the case" and "size" ought to be rejected. The Court provides a default three designated representatives and ACT would like to exert that right, if it needs to. Restricting the designated representatives to one at the outset removes that ability to provide another representative if the need arises, and is therefore prejudicial to ACT on its face.

As with the provision for in-house counsel (which Defendant seems to have no issue with), there are safeguards built into this provision for designated representatives. Additionally, ACT has represented to Defendant that it would have its designated representatives sign the undertaking in the Protective Order noted as Appendix A such that it is not a black box for Defendant in terms of who has access to its CONFIDENTIAL information, and rendering moot Defendant's argument that "ACT does not provide any additional limits or safeguards, such as requiring any such representative to be bound by the Protective Order."

2

**Google's Position**

In its Amended Complaint, ACT has alleged infringement of products across Google's entire line of offerings, including the Pixel 4a, Pixel 5, Pixel 5a, Pixel 6, Pixel 6 Pro, Pixel 6a, Pixel 7, Pixel 7 Pro, Pixel 7a, Pixel Fold, Pixel 8, Pixel 8 Pro, Pixel 8a, Google Chromebook laptop products, Google Pixel Slate, Google Chrome, Google Chromecast, Android/Google TV, YouTube, Google Meet, and Google Duo, as well as Google Cloud Content Delivery Network (CDN), and Defendant's Google Smart Home. ECF No. 23. Indisputably, each of these reflects years and years of development and relates to proprietary information and technology developed at Google, that are reflected in Google's DESIGNATED MATERIALS.

ACT requests that "designated representatives" of ACT be allowed to access these DESIGNATED MATERIALS, without any further limitations. Given the sensitivity of Google's materials, Google requests that a series of common-sense limitations be placed on ACT's designated representatives. For example, Google proposes that the designated representative sign and agree to be bound by the Undertaking. Further, given that Google's confidential technology has been described as its "crown jewels," it is reasonable to request that access be limited to only those that need to do so. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, No. 3:13CV781-HEH, 2014 WL 2468553, at *2 (E.D. Va. June 2, 2014). As such, ACT's designated representative should be a single individual who is "officer" of ACT who "either has responsibility for making decisions dealing directly with the litigation in this Action or who is assisting outside counsel in preparation for proceedings in this Action." Given ACT's small size, ACT likely does not have a need to provide more than one officer with access. This strikes a balance between ACT's need to understand the case and minimizing the risk of inadvertent disclosure. Likewise, Google's proposed notice process allows Google time to investigate the individual for security related

concerns. Indeed, Google's proposed limitations would provide no actual burden to ACT, as ACT already has an officer in mind who already satisfies these criteria.

In contrast, because ACT does not provide any additional limits or safeguards, such as requiring any such representative to be bound by the Protective Order, these persons present a significant risk of inadvertent disclosure of sensitive information to Google's competitors. For example, as discussed below regarding Google's proposal to bind related parties, without such safeguards such individuals may avoid the Protective Order by simply leaving ACT. Given the sensitivity of Google's confidential materials, Google's proposal, which includes reasonable limits and safeguards, suits the needs of the case more appropriately.

ACT's representation that its representatives will sign the Undertaking does not resolve Google's concerns, as this fails to provide the other safeguards, such as the ability to object, that Google's proposal supplies. Further, this concession does not address the need for reasonable limitations as proposed by Google, such as the number of representatives or the role they would play with respect to the litigation.

## II.     BREAKOUT ROOM (PARAGRAPH 10)

**ACT's Position**

Defendant needlessly disagrees with having a commonplace provision that would provide a "breakout room" or similar private workspace for source code reviewers to access their electronics or electronic notes away from the source code review room. Defendant's argument below (*see infra*) creates a bifurcation between provisions more directly applicable to the source code access and provisions that are indirectly applicable to source code access. But no such bifurcation exists.

Logistics related to all aspects of the source code review are relevant to the Protective Order. Having a breakout room is a logistical matter regarding source code reviewers' access to

4

their personal electronics and communications with counsel outside of the monitored review room, similar to provisions that are already in the Protective Order. Therefore, such provisions are proper for a Protective Order. For example, the parties have agreed to provisions in ¶ 10(a) that the "[u]se or possession of any input/output device (*e.g.,* USB memory stick, mobile phone or tablet, camera or any camera-enabled device, CD, floppy disk, portable hard drive, laptop, or any device that can access the Internet or any other network or external system, etc.) is prohibited while accessing the computer containing the source code." Such a provision directly corresponds to what happens to the source code reviewer's electronic communication devices while in the source code review room and where they would be able to access such devices. Defendant cannot deny it is common for source code reviewers to seek counsel's advice and logistical assistance during such reviews outside the designated source code review room.

Notably, in arriving at the present impasse, Defendant had agreed to a separate, non-enforceable stipulation that it would provide a break out room to ACT's source code reviewers but provided no rationale for not including that in this enforceable Court order beyond avoiding such a provision in future cases (by preventing other parties from being able to see in a public filing that Defendant agrees to break-out rooms). ACT simply is requesting for the assurance that comes with a Court-enforced order to something that Defendant represents it would do anyway.

**Google's Position**

There is no dispute that Google will provide a "breakout room" for source code reviewers; the only issue is whether that issue belongs in a Protective Order, when it has nothing to do with confidentiality. ACT insists that the Protective Order require a breakout room for source code reviewers, but it is not reasonable or appropriate that accommodations going beyond access to Google's source code be spelled out in the Protective Order. As Google has explained, Google has

already agreed to provide a breakout room for ACT's source code reviewers, but there is no need for a protective order to mandate specific accommodations. These types of arrangements are usually arranged by the parties in the normal course of discovery, such as for breakout rooms for depositions, without the need for specific provisions in a protective order. There is no need to deviate in this case.

Rule 26(c) provides a list of what a protective order covers, which includes only ordering that "confidential research, development, or commercial information not be revealed or be revealed only in a specified way." ACT's requested addition is not related to revealing Google's source code "in a specified way," that would provide confidentiality for the producing Party, and instead relates to convenience for ACT's reviewer. In contrast, the other provisions in the same sub-paragraph 10(a) directly relate to either accessing the source code (e.g., a stand alone computer, a locked room, etc.) or security measures for doing so (encryption, restricted devices, monitoring, no recording, etc.). Other provisions in paragraph 10 relate to scheduling access (10(b)), use and format of computers (10(c), (d)), persons with access 10 ((e), (l)), copying of source code (10 (f)-(h)), storage and transport of source code (10(i), (j)), allowed notes (10(k)), maintaining source code (10(m), (n)) reporting loss (10(o)), tools for access (10(p)), etc. As such, ACT's request is out of place and more appropriately arranged between the parties, as opposed to an express provision in the protective order. Indeed, recognizing this, the Model Protective Order does not go into any unnecessary details such as these that are not directly relevant to the access and security of confidential materials. *See* E.D. Tex. Model Protective Order at 10.

### III. ACQUISITION BAR (PARAGRAPH 12)

**ACT's Position**

Defendant has not shown good cause to prevent Plaintiff's counsel from any activities relating to (a) video/audio codecs, including video/audio decoding and encoding, assessing or

responding to changes in communication quality in communication systems and protocols therefor, or cloud or server based media and data storage, management, control, or distribution systems and processes therefor; (b) any products, services, or systems accused by ACT in this Action; or (c) the patents asserted in this Action and any patent or application claiming priority to or otherwise related to the patents asserted in this Action, and advising or counseling its clients regarding such acquisitions, for two years after the final disposition of this action. Defendant bears the burden of showing that a bar is appropriate because (1) the risk of inadvertent disclosure exists; and (2) the balance of interests suggests a bar is appropriate. *In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).

Defendant makes no showing that there is a risk of inadvertent disclosure. Indeed, Defendants' three pages of argument below is composed almost entirely of citations and quotes from other cases. *Infra*. Defendant has not (and cannot) show that Plaintiff has ever disclosed any of Defendant's information in a previous case, nor that any similarly-situated counsel has done so. Moreover, even if there were a risk of disclosure, Defendant does not even attempt to show that the balance of interests favors a bar. In particular, Defendant does not illustrate any potential harm that may occur if there is no bar. *See infra.* By contrast, imposing the bar will drastically harm both Plaintiff's counsel and other parties, including ACT, who would be denied the counsel of their choice. *See In re Deutsche Bank*, 605 F.3d at 1379 ("[T]he district court must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice.").

Defendant has failed to show that there is a risk of inadvertent disclosure and that the balance of interests favors a bar. Accordingly, the Court should decline to enter Defendant's proposed Acquisition Bar. *Jenam Tech, LLC v. Samsung Elecs. Am.*, No. 4:19-cv-00250-ALM-

7

KPJ, 2020 WL 757097, at *2 (E.D. Tex. Feb. 4, 2020) ("The Court finds Defendants have not met their burden, particularly considering the broad restriction the proposed Acquisition Bar would impose upon Plaintiff's counsel and Defendant's failure to demonstrate the potential harm of not including the Bar.").

Defendant admits that it seeks to restrict the activities of ACT's counsel to the extent of impairing the firm's work. The adoption of Defendant's provision would result in the draconian result of not being able to advise any clients in acquiring patents related to the broad fields of invention identified in the Protective Order for an entire year: video/audio codecs, including video/audio decoding and encoding, assessing or responding to changes in communication quality in communication systems and protocols therefor, or cloud or server based media and data storage, management, control, or distribution systems and processes.

Defendant's attempt to analogize a prosecution bar to its high restrictive acquisition bar is meritless and ACT's agreement to a prosecution bar—which is included in the Court's sample Protective Order—is not an admission that there is any risk of inadvertent disclosure. The Court should not punish ACT for making reasonable attempts to compromise on the Protective Order. Moreover, ACT agreed to a prosecution bar with several limitations. For example, the parties agreed that "this [prosecution bar] provision shall not preclude any person (including counsel or experts) who obtains, receives, or otherwise learns, in whole or in part, the other Party's DESIGNATED MATERIAL or HIGHLY SENSITIVE MATERIAL under this Order from participating in or representing it in reexamination proceedings, Post-Grant Review proceedings, *Inter Partes* Review proceedings, or Covered Business Method Review proceedings involving the patents-in-suit provided that they do not advise on, consult on, prepare, draft, or edit any amendment to specifications or claims based on those proceedings." ACT did not agree to a

wholesale prosecution bar to the extent it would prevent ACT's counsel from participating in inter partes review, for example, as Defendant seems to imply.

**Google's Position**

The Parties disagree as to whether an acquisition bar provision should be included in the Protective Order. Google proposes including a provision in the Protective Order barring any person who has viewed an opposing Party's HIGHLY SENSITIVE TECHNICAL MATERIAL from activities related to: (1) the acquisition of patents related to the Field of Invention; and (2) advising or counseling clients regarding the same. Google's proposal is similar to numerous protective orders entered in this district. *See, e.g.*, *Eolas Techs. Inc. v. Amazon.com, Inc.*, No. 6:15-cv-1038-RWS, Dkts. 82 at 3, 98 ¶ 12 (E.D. Tex. Apr. 21, 2016, May 5, 2016) (imposing an acquisition bar under circumstances similar to those here); *E-Contact Techs., LLC v. Apple, Inc.*, No. 1:11-cv-00426-(LED/KFG), 2012 WL 11924448, at *2 (E.D. Tex. June 19, 2012) ("This Court finds that the potential harm of inadvertent disclosure outweighs the restriction imposed on counsel for Plaintiff. An acquisition bar should be included in the protective order."); *see also PersonalWeb Techs., LLC v. Google Inc.*, No. 6:11-CV-00656 (LED), Dkt. 89, at § 2 (E.D. Tex. Aug. 9, 2012).

Acquisition bars ensure that individuals who access confidential technical information do not "consciously or subconsciously use their knowledge [of confidential information] to advise a client on which patents to acquire." *EPL Holdings, LLC v. Apple Inc.*, No. 12-CV-04306, 2013 WL 2181584, at *4 (N.D. Cal. May 20, 2013). The rationale for such restrictions is well-established: "It is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). Notwithstanding general provisions "specifying that designated confidential information may be used only for purposes of

the current litigation," and notwithstanding the good faith of all individuals involved, courts recognize that "there may be circumstances in which even the most rigorous efforts . . . to preserve confidentiality . . . may not prevent inadvertent compromise." *Id.*; *see also Catch A Wave Techs., Inc. v. Sirius XM Radio, Inc.*, No. 12-CV-05791, 2013 WL 9868422, at *1 (N.D. Cal. Aug. 6, 2013) ("The disclosure of confidential, 'crown jewel' technology to opposing counsel is a burden to which parties must submit. . . . The patent acquisition bar requested by [the defendant] adds an additional layer of protection by prohibiting not just disclosure and use, but also advising.").

An acquisition bar is particularly justified in cases, such as this one, involving entities whose primary business is acquiring and asserting patents. *See, e.g.*, *Intell. Ventures I, LLC v. Lenovo Grp. Ltd.*, No. 16-CV-10860-PBS, 2019 WL 343242, at *3 (D. Mass. Jan. 25, 2019) (entering acquisition bar where plaintiffs were "in the business of acquiring patents and patent applications in order to monetize them"); *Inventor Holdings, LLC v. Google, Inc.*, No. 1:14-cv-00186 (GMS), 2014 WL 4369504, at *1 (D. Del. Aug. 27, 2014) (emphasizing plaintiff's status as a non-practicing entity in entering acquisition bar).[1] Indeed, ACT's outside counsel, who has access to materials designated as HIGHLY SENSITIVE TECHNICAL MATERIAL, has been

---

[1] *See also Uniloc USA, Inc. v. Apple Inc.*, No. 18-CV-00572, Dkt. No. 107, 2-3 (N.D. Cal. July 2, 2018); *Univ. of Va. Patent Found. v. Gen. Elec. Co.*, No. 14-CV-00051, Dkt. No. 61, 9-10 (W.D. Va. June 11, 2015); *Catch A Wave Techs.*, 2013 WL 9868422, at *1; *EPL Holdings*, 2013 WL 2181584, at *5; *Unwired Planet LLC v. Apple Inc.*, No. 12-CV-00505, 2013 WL 1501489, at *7 (D. Nev. Apr. 11, 2013); *E-Contact Techs.*, 2012 WL 11924448, at *2; *cf. Blackbird Tech LLC v. Serv. Lighting & Elec. Supplies, Inc.*, No. 15-CV-00053, 2016 WL 2904592, at *6 (D. Del. May 18, 2016) (requiring covenant not to sue on patents acquired during duration of protective order). On the other hand, cases declining to impose an acquisition bar typically involve a failure by the movant to show any risk of inadvertent disclosure. *See, e.g.*, *Intell. Ventures I*, 2019 WL 343242, at *4 (declining to enter an acquisition bar when movant had not "made a showing of good cause or a significant risk of inadvertent disclosure as required"); *Prism Techs., LLC v. AT&T Mobility, LLC*, No. 12-CV-00122, 2013 WL 100390, at *5–6 (D. Neb. Jan. 8, 2013) (declining to enter an acquisition bar against an individual who was already prohibited from accessing highly confidential information).

active in suing Google on behalf of patent-assertion entities, including four previous actions in this District. As a result, there is an elevated risk that ACT's counsel may "consciously or subconsciously use their knowledge" when advising a client on which patents to acquire. *EPL Holdings*, 2013 WL 2181584, at *4.

Allowing ACT to use knowledge, even inadvertently, of Google's highly sensitive technical information to inform its future acquisition of patents to assert against Google in future cases would be perverse and highly prejudicial to Google. *See, e.g.*, *Inventor Holdings*, 2014 WL 4369504 at *1–2 (citing the risk of "inadvertent disclosure" and "the fact that the plaintiff is a non-practicing entity" as justification for imposing a two-year acquisition bar); *Unwired Planet*, 2013 WL 1501489, at *7 (finding that "good cause exists to include in the protective order the bar that Unwired's outside counsel cannot use the confidential information obtained in this lawsuit for the purpose of giving advice on patent acquisitions").

Notably, ACT has agreed to include a patent prosecution bar in the Proposed Protective Order, demonstrating that it appreciates, in principle, the genuine risk of inadvertent disclosure. Logically, then, ACT should not oppose an analogous safeguard in the acquisition context. *See E-Contact*, 2012 WL 11924448, at *2 (recognizing the inherent contradiction in acquiescing to a prosecution bar while opposing an acquisition bar); *see also EPL Holdings*, 2013 WL 2181584, at *4 (explaining that patent acquisition and prosecution create the same risk of inadvertent use because "litigation counsel may consciously or subconsciously use their knowledge . . . to advise a client on which patents to acquire"); *Inventor Holdings*, 2014 WL 4369504, at *1 ("It is difficult to envision circumstances in which the inadvertent disclosure of [Google's] highly confidential information would not be a risk about which to be concerned when the issue being discussed is the future acquisition of patents."). Despite an attorney's best efforts to compartmentalize separate

11

cases and representations, the same danger of inadvertent disclosure when an attorney receives access to confidential information during the course of litigation and then prosecutes patents in the same field are inherent in acquisition activities. *Deutsche Bank*, 605 F.3d at 1378.

Indeed, in *Inventor Holdings*, the court incorporated an acquisition bar into the protective order over the plaintiff's objection because "[l]itigation counsel who have access to Google's critical source code and other highly confidential information should not be permitted to consult with their client strategically under circumstances where an inadvertent disclosure of what they have seen at the defendant's stand-alone computer could potentially be used to harm the defendant." 2014 WL 4369504, at *2. The court correctly recognized that "the likelihood of litigation counsel being unwittingly converted to a competitive decision-maker for his/her client seems a greater possibility when the acquisition of new patents is the context being considered." *Id.*

Moreover, the acquisition bar proposed by Google is narrowly tailored to acquisitions in the Fields of Invention, and it is of reasonable duration—***only one year***. *Cf. id.* (imposing a two-year acquisitions bar). It is not an attempt to unfairly avoid infringement claims or to stifle competition; it is intended only to ensure that individuals with access to Google's highly sensitive technical material do not inadvertently misuse it.

## IV.   IDENTIFICATION OF BOUND PARTIES (PARAGRAPH 32)

**ACT's Position**

There is no reason to include a catch-all provision as to who the Protective Order binds when the other provisions are abundantly clear. For example, Paragraph 5 lists each category of individual that is allowed access to DESIGNATED MATERIAL, and as such, include the categories of individuals that are bound by the Protective Order. Defendant's proposed addition of "the Parties hereto, their attorneys, and their successors, executors, personal representatives,

administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control" is either duplicative or improperly extends the universe beyond which the Protective Order can reasonably be interpreted to cover through the addition of terms like "heirs," "administrators," and "any persons or organizations over which they have direct control." The mere identification of such categories of individuals is unduly burdensome and vague, and likely why such a provision was not included in this Court's model Protective Order.

Defendant's allegation that a restructure of ACT would get around the Protective Order is unreasonable, nor is there a reason to assume that ACT would attempt to restructure to avoid the Protective Order. As a preliminary matter, the only employees of ACT that would be bound are the one in-house counsel per 5(c) or the three designated representatives of 5(d) who would only have access to CONFIDENTIAL information. Were there to be a restructure, although there is no current reason to believe there would be, any subsequent in-house counsel or designated representative would follow the procedure outlined in the Protective Order to receive CONFIDENTIAL INFORMATION.

Defendant's position that ACT should be restricted to this provision based on previous agreements to Protective Orders made by counsel for different clients has no basis in law and is frankly nonsensical. Different clients have different needs and expectations, and it would be equally nonsensical to rely on prior Protective Orders agreed to by Google's current counsel.

**Google's Position**

ACT agrees that a protective order is appropriate for the current litigation, and ACT will be bound by it when entered. Google's provision merely makes clear that other related parties, over which ACT has direct control, would likewise be bound by the protective order.

ACT argues that this provision would be duplicative of expressly existing obligations, but with regard to successors and assignees of ACT, the protective order currently only restricts prosecution and acquisition. Specifically, while the prosecution bar of the protective order expressly prohibits prosecution on behalf of "the Party or its acquirer, successor, predecessor, or other affiliate" (paragraph 11), no similar express protections exist for "use" of knowledge related to DESIGNATED MATERIAL, including use for business purposes (paragraph 7). Without expressly binding ACT's successors, assignees, and the other related entities, the provisions restricting use of Google's sensitive information in the protective order may be avoided by restructuring ACT. Likewise, without expressly binding individuals though other means such as the Undertaking, ACT's attorneys, consultants, and experts, and their related entities, these provisions may be avoided by leaving their present relationships with ACT. Moreover, to the extent that ACT concedes that there are related parties for which this provision is not duplicative, this just shows the need for such a provision.

Thus, provisions similar to the provision proposed by Google have been adopted in various other protective orders, including those entered into by ACT's current counsel, *see, e.g.*, *Vocalife v. Harman Int'l Indus. Inc.*, No. 2:21-CV-00123-JRG, Dkt. No. 62 (E.D. Tex. Sept. 10, 2021); *RFCyber Corp. v. Google LLC*, No. 2:20-cv-00274-JRG, Dkt. No. 85 (E.D. Tex. Jul. 26, 2021), and should be adopted here as well.

Dated:  August 22, 2024                    Respectfully submitted,

*/s/ Peter Lambrianakos*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
Joseph M. Mercadante
NY Bar No. 4784930
Email: jmercadante@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue, Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Samuel F. Baxter
Texas Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

***ATTORNEYS FOR PLAINTIFF***
***ADVANCED CODING TECHNOLOGIES, LLC***

15

*/s/ Michael E. Jones with permission for Patricia Young)*
Michael E. Jones (State Bar No. 10929400)
mikejones@potterminton.com
Shaun W. Hassett (State Bar No. 24074372)
shaunhassett@potterminton.com
**POTTER MINTON, P.C.**
102 North College, Suite 900
Tyler, Texas 75702
(903) 597-8311
(903) 593-0846 facsimile

Douglas E. Lumish
Linfong Tzeng
**LATHAM & WATKINS LLP**
140 Scott Drive
Silicon Valley, CA 94025
Tel: (650) 328-4600
Fax: (650) 463-2600
doug.lumish@lw.com
linfong.tzeng@lw.com

Patricia Young
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
patricia.young@lw.com

Joseph H. Lee
**LATHAM & WATKINS LLP**
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel: (714) 540-1235
Fax: (714) 755-8290
joseph.lee@lw.com

***ATTORNEYS FOR DEFENDANT GOOGLE LLC***

16

## CERTIFICATE OF CONFERENCE

      The undersigned hereby certifies that counsel for Plaintiff and Defendant complied with the meet and confer requirement in Local Rule CV-7(i).  This motion is being filed jointly.

*/s/ Michael E. Jones*
